on behalf of the people. Thank you. Ms. Palacio, whenever you are ready. May it please the court, my name is Grace Palacio and I represent the defendant, Carmilla Hayes. Mr. Hayes' opening brief raised three issues, but for the purposes of this oral argument, I will limit my discussion to two arguments, the reasonable doubt claim and the ineffective assistance of counsel claim based on counsel's failure to present flinch evidence to support Hayes' claim of self-defense. It is undisputed that during the early morning hours of November 24, 2007, shots were fired between the defendant, Carmilla Hayes, and John Morissette at a bar called the Hole in the Wall Club. During this exchange, John Wilson was hit in the foot by shotgun pellets fired from Morissette's gun. And Morissette was hit in the foot from a shot fired by Hayes. Counsel, let me just ask you quickly, as far as when you say they were all shotgun pellets in the foot of Mr. Morissette, how do we know that? What do we know in the evidence as to what those holes represented? The evidence was that Wilson testified that he was told that he had 22 holes in his foot. And it was corroborated by the fact that, you know, shotgun discharges pellets and they can be multiple, multiple pellets. And these were the kinds of holes that were in his foot. The state even admitted at trial that, yes, the injuries to Wilson's foot were caused by a shotgun pellet, by shotgun. There is no evidence suggesting that he was shot by a handgun, which was what Hayes had been firing. Hayes has always maintained that he acted in self-defense. After a jury trial, Hayes was acquitted of all charges against Wilson, but convicted of aggravated battery with a firearm against Morissette. Counsel, let me ask you something. The self-defense argument, you know, we agree that juries can draw reasonable inferences from evidence that's in the trial. Mr. Hayes left the bar and then came back. Yes. So to the extent that something occurred that resulted in his having to resort to self-defense, didn't he precipitate it? No. Hayes said that, yes, he was angry when he left the bar, but he left. But he didn't stay away. He left the bar and drove away and he came back. Can't the jury reasonably infer that the reason that he came back was to do just what happened, fire off a shot or whatever it was that he did? Well, Hayes is a... He left. He was gone. I mean, the self-defense argument is hard to swallow because the guy was gone and then he came back. And the other witnesses testified that he came back to start trouble. Well, Hayes has always maintained that he came back to get his girlfriend who stayed at the bar. And that's perfectly reasonable, a perfectly reasonable reason to come back to. But it still does not mean that when he came into the bar that there were not, that Morissette did not pull a shotgun on him first and fire first. Oh, I understand. I'm just asking about an inference that a jury could draw in terms of discounting the credibility of Hayes' version of the event since he left and he came back. And he agreed that he was angry. Well, if we review the evidence, that's Hayes' version of events. But you have to weigh that against what the state's version of events was. And you have these three witnesses who are admitted liars. And then you also have the physical evidence that doesn't corroborate the state's case at all and far more corroborates Hayes' version of events that, you know, a shotgun was fired first and at which point then he pulled out a gun in self-defense and fired into the floor, which is actually what Wilson says. That he sees Hayes pull out a gun and fire into the floor. And what Hayes has always maintained is that he did this only in a self-defensive measure. He was just trying to get himself out of that bar safely because he didn't anticipate that he would be shot at with a shotgun. And so if we actually look at what the state's evidence is, we have three occurrence witnesses that simply cannot be believed. They all have motivation and admittedly lie to protect Morissette, who makes much more sense as the initial shooter. He pulls out the gun. He's the bouncer. He's not supposed to have a gun. He's a convicted felon. And he fires first. And then this is corroborated by the physical evidence because Wilson is shot at first. He's shot at by the shotgun. He gets hit in the foot. And then he ducks under the pool table. And while under the pool table, then he hears a succession of shots. And this lines up with what Hayes has always said. Hayes says that he was shot at and that he pulled out his gun. He shot it into the floor. And then he fired a few more times into the floor to get out of the club. This all aligns with what Hayes has always said was his self-defensive actions. It simply does not line up with what the state claims or with the state's witnesses. And they were all inconsistent to begin with. But they claim, Bertha says that, you know, Hayes comes in and just comes out straight shooting. Morissette says he comes in and he starts shooting too. But how can this be possible when Wilson was hit first and hit by a shotgun? Counsel, can we focus on Medford when he came through the door? Did he have a weapon out at that point in time? Hayes says that he did not. And then it's inconsistent. It's all over the board about whether he had the gun or not. Bertha, who I think you can just discount, she's inconsistent all the time. But she says that he comes in, the gun's already out. He says, now what? And he starts to shoot. That's what Bertha says. Morissette says that he comes in, he's got the gun out, and then he begins to shoot. And Wilson says that Hayes comes in and walks up to the front of the bar. And then he takes the gun out and begins to shoot. They're all inconsistent. But either way, the evidence just shows that Wilson was shot at first. So it can't possibly be that Hayes came in and started firing. And then after a succession of shots, then Morissette fires. And then Wilson is hit in the foot by the shotgun pellets. And then he goes under the pool table. And then he hears a succession of shots that just does not add up. Counsel, isn't the burden that this would be so improbable or unsatisfactory as far as the evidence is concerned or unconvincing? Right. So is it just totally not believable? I would maintain that this court recently held in People v. Herman that, you know, when the evidence is unreasonable, improbable, unsatisfactory, that you have to overturn a conviction. And in that case, you had evidence that this court found was consistent with the defendant's version of events. And I would say that's the case here, too. This physical evidence is consistent with Hayes' version of events. And in Herman, there was also what this court deemed to be an unbelievable witness. I would say there's three unbelievable witnesses here. John Morissette certainly had a lot to lose. He could have faced charges. He was a convicted felon. He wasn't supposed to have a gun. Bertha clearly wants to protect her own son, and she says as much. I know he wasn't supposed to have a gun. I didn't say anything because of that. Wilson is in the exact same position. He's living with Bertha at the time. John Morissette considers him his, quote, unquote, stepfather. He's protecting John Morissette as well. I mean, to the point where they lie repeatedly to the police or the state's attorney, they must have hid the gun or something to that effect because the police search the bar and they don't find a weapon. And it's not until, you know, it becomes very clear that John Wilson was hit by a shotgun that Morissette finally admits that, yes, I played a role in this shooting. I had a shotgun. I fired. And that doesn't come out until way after they've been spoken to by multiple police officers, by detectives, by the state's attorney. There's just nothing believable about their testimony, and then their testimony doesn't even add up with the physical evidence. Whereas Hayes has always been consistent, has always maintained that he fired in self-defense, fired into the floor. He wasn't trying to hurt anybody. That's the evidence that was before the trial, the trial court, and the state simply cannot meet its burden of proving that Hayes was not firing in self-defense. Can you address your lynch issue if you're done with this one? Well, you know, having discussed the conflicting testimony and how it's the issue is whether who was the initial aggressor, it became imperative for trial counsel to get before the jury the fact that Morissette had this violent nature. And so what he had before him was a discussion that Wilson had had with a private investigator in which he said he was at a bar one night. He had a ---- Counsel, what are the two things that you have to show on the lynch to make it admissible in this circumstance? Well, the first prong, and that doesn't apply here, is that the defendant has to have personal knowledge about the victim's violent tendencies so that that informs his state of mind in the moment. The second one is that when there is, you know, conflicting testimonies about who was the initial aggressor, the defendant is allowed to bring in evidence of the victim's violent tendencies through, you know, prior acts or convictions or arrests. And that's where this falls into. So Wilson had told this private investigator that he was at the same bar one night where Morissette was acting as a bouncer or the DJ or whatever, and he has this verbal disagreement with a patron there. We know the argument because, like I said, we've read this carefully. Right. But are you arguing that the trial strategy that was employed by defense counsel here was so unreasonable that it fell below effective assistance of counsel because he chose to show that perhaps he chose a bias argument as opposed to the lynch argument? Yes, absolutely. What we have here ---- Well, in hindsight, of course, it didn't work. Right. But I think there's a lot of case law that says simply because a strategy doesn't work, it doesn't mean that the strategy was ineffective assistance of counsel. So, I mean ---- Well, I would argue it's certainly unreasonable here where counsel's entire argument has always been self-defense. Morissette was the initial aggressor. Morissette is the hothead. And so for him to have this evidence that, you know, in Morissette's capacity as the bouncer at this club, he's out with an altercation at this club through physical violence. Wilson leaves the club, he goes to his car to get money, and he turns around and Morissette is putting a gun in his face and he cocks it. And this is someone that he considered to be his stepfather. Counsel, you didn't answer my question. Yes. I'm asking you whether the choice of the ---- he had two strategies available to him. Yes. The one he chose you are now saying squarely puts him in the realm of being ineffective because he chose that strategy. And I am asking you why do you say that? Well, because this kind of evidence could have swayed the jury into believing or seeing more fully what this situation was. We're trying to figure out who the initial aggressor is. That's what counsel's entire argument was. And we have the so-called victim who has this temperament in his capacity as this bouncer who's willing to react with physical violence and gun violence while he's working as a bouncer at this club. That's how he reacts to altercations in the club. And so what the jury needs, and that's the whole purpose of lynch, and what they contemplate is the jury needs a full picture of what's happening and have a better idea of the violent tendencies of the victim in order to better contemplate who was the initial aggressor. Without putting this evidence before the jury, the jury can't really assess, you know, was John Morris at the initial aggressor? Is this a way he would have acted? It may have sounded unreasonable to them that someone would react by pulling out a shotgun in this kind of situation. But if you put that in the context of this is someone who reacts like this normally, even against someone who he considers a friend or a stepfather figure, the jury very well could have come back with a not guilty verdict on this charge. So, yes, it is unreasonable for counsel to do that because that is lynch evidence was certainly the most probative way to bring in this kind of evidence. He clearly wanted to bring in this evidence, and had he brought it in, surely the jury could have considered that and decided, yes, that Hayes, as he always claimed, was acting in self-defense. Counsel, this was an arrest, not a conviction on that. Right. Right. But lynch also says that, you know, you can be at arrest, and then the witness would have to have personal knowledge of it, which Wilson would have had. There is a distinction there. Yes. As far as counsel's trial strategy, I mean, all along he's trying to say these witnesses are liars, liars, liars, right? So then he wants the jury to believe that now he's not a liar. Right. Wouldn't that put him in an unusual position as far as his trial strategy? I mean, yes, it's problematic that Wilson has these inconsistencies, but I would also argue that, you know, it's one more thing for the jury to consider. There's all these conflicting stories, and I would also argue that, you know, of the three witnesses, Wilson has the least motivation to lie on Morris' behalf, especially by the time trial comes around. He's no longer in a relationship with Bertha Morrissette, and he even testified that, you know, he always warned John Morrissette about keeping the shotgun at the bar. So clearly, you know, he does establish a pattern that, yes, he admits that he lied initially because he was living with Bertha Morrissette at the time. By the time trial rolls around, that's no longer the case. He has no more motivation to lie, especially on this matter. Okay. But the jury also heard of Mr. Morrissette's prior convictions. They did. But I would argue there's certainly a difference between hearing that someone was simply convicted of a burglary and has an ag-UQW versus hearing that, you know, in this kind of situation, Morrissette acts very rashly and acts with violence. That certainly paints a picture that's different than just hearing that someone has prior convictions. So to conclude, primarily his conviction must be reversed where the state has not met its burden of proving that he did not act in self-defense. The state's case was built entirely on the unreliable testimony of three liars, and the physical evidence does not support the state's version of events. Alternatively, Hayes is entitled to a new trial because counsel was ineffective for not bringing forward lynch evidence to prove that Hayes was acting in self-defense. Thank you. Thank you. Good morning, and may it please the Court. I'm sorely tempted to start out by saying a man walked into a bar. But I'll move on to the actual argument, which is the fact that, as Your Honors are well aware, there's a standard of review on the first issue. And that's whether or not any rational trier of fact could view this evidence, taking the light most favorable to the prosecution, and find the elements of the offense. And certainly here there is evidence that can support the finding of aggravated battery with a firearm against the defendant. It's interesting that the counsel today has focused on John Wilson's statement as if John Wilson is telling the truth because the fact of the matter is the jury didn't believe John Wilson. And frankly, I have to admit, John Wilson's testimony was shoddy at best. Clearly he was not shot by the defendant as he came in the door. He was shot by Mr. Morissette later on. The jury didn't convict Hayes of shooting John Wilson, did they? They did not. So they didn't believe that either. They didn't believe that. So the counsel's argument is that the physical evidence doesn't match up. Well, that physical evidence is all premised on John Wilson's testimony. Now, interesting, John Wilson was a person that, as you pointed out, that the defense argued at trial extensively. And this relates to both issues, really. It relates both to the reasonable doubt and to the lynch issue. This was from the defense counsel's clothing argument. Wilson admitted lying to the police, to the detectives. How did John Wilson lie to you on the stand? I will tell you exactly how. He lied to you on the stand. He lied to you then. He lied in court. So John Wilson couldn't help himself but lie to you even yesterday. It wasn't enough that he lied to the police two years ago, to the detectives, to everybody else. He had to lie again here in court. So, I mean, their whole argument was premised on John Wilson is a liar, is a liar, is a liar, and premised their argument today on the notion that what John Wilson was saying was true and therefore that establishes the physical evidence. And in their lynch argument, the notion is that John Wilson, even though he's a liar, he's a liar, he's a liar, don't believe him, he was telling, he would have been telling the truth, if we can assume for the purpose of argument that he really would have said what he said to the defense investigator, that that's the one time he happened to not tell a lie. Interestingly enough, even the substance of what he tells the defense investigator isn't that damning to John Morrissette himself, because if you look at it in the context, what Wilson is talking about is an event several weeks after this shooting, in which there's an argument in the bar. Wilson and Morrissette have an argument. But Mr. Fisher, we can't completely discount that. I mean, any time you pull a gun and put it in somebody's face, I think that that comes under the category of being violent. So, I mean, you're making light of the incident, or it seems to be, but I don't think we can discount the fact that that was violent, I think, by any standard. Well, it's violent, but it's in response. I'm not making light of it, but I'm saying it's more of a self-defense, because this man, remember, Morrissette has already had somebody go out to his car, or actually, in this case, leave, go out to his car the first time to get a tire iron, but decide not to go back, then go home, go to the railroad tracks, according to the defendant, pick up a gun and come back into the bar. So he's already had an argument with somebody who's left the bar, gone to a car, got a gun and come back. So is it totally unreasonable for Morrissette, if that happened, to go out and follow him and head him off at the pass, basically, say, you're not going to pull a gun on me? The bottom line, though, is that the jury knew that Morrissette had lied about several different things. They knew that he was a convicted felon. They knew he had an aggravated unlawful use of weapons conviction. They knew that he had a shotgun in the bar. There was things that they knew about him. This would not have been the straw that broke the camel's back. Counsel, let me ask you, the fact that defense counsel tried to inquire about this, did he not, and the court sustained an objection to it? Well, he tried under what the defense is now even admitting was something that wouldn't fly. I don't even understand what he was doing at the time frame. He said he wanted for bias and motive. It would not have gone, what his bias or motive against these people was, it made no sense at the time. So that was an improper line of attack. The question is, though, would it have made a difference had this come in? So you're agreeing with her that that was a really bad strategy and he shouldn't have used it. No, the two strategies that were available, he chose the wrong one. And she's saying that he chose the wrong one that was ineffective assistance of counsel and therefore reversible error. What do you say to that? Well, he didn't choose between the two. I mean, we don't know why he went on the bias. And had he been successful, he could have still gotten the information in under the bias. He decided to go on that route. It didn't work. He was wrong. There was no basis for that. We did object to it at trial. And we said that, Judge, there is no such basis. But the second prong of Strickland is prejudice. And they cannot sustain their burden in this case under the prejudice prong because this would have been cumulative. And, again, it posits a situation where you've got a witness that you're calling he's a liar, he's a liar, he's a liar, he's a liar. But, oh, in this little instance two weeks later, he's telling the truth about this. So that's a tough sell. And I don't think that you can say as a matter of law that that would have tipped the balance, that that is prejudice. Returning back to the reasonable dart argument, there are certain things that are very telling. Even defendant in his own testimony, on direct from his own defense counsel, stated that when he came back into the bar, everyone scattered. Why would they have scattered if he didn't have that gun out? Clearly he had the gun out. Let's throw Wilson out. Let's just say Wilson is, you know, Wilson is lying. The jury didn't believe him. So, you know, his version of events is obviously suspect. He was not shot by the defendant. But Bertha and John Morissette testified the defendant pulls the gun out first. The defendant fires the first shots. Morissette's very, very honest in his testimony. He says, yes, the defendant pulled a gun out, shot at me. I was trying to shoot him. I wanted to shoot the defendant because he pulled a gun out in this bar. And when I pulled the gun up, somebody hit me and the gun went off into the floor and that's the shot that hit Morissette. Defendant basically says, I walk into a bar. I'm not doing anything. This man pulled a shotgun on me and I shoot into the floor. I'm not acting in self-defense. I'm shooting warning shots and then I run. That's ridiculous. I mean, he would have fired back at Morissette if Morissette fired first. Morissette even admits that he was trying to shoot the defendant. That's a much more reasonable construction. And a rational trier of fact, such as this jury, could certainly base their conviction on those facts. Were the witnesses impeached? Sure, they were impeached. But is there enough in their testimony that a rational trier of fact could find the elements of aggravated battery with a firearm? Certainly there's enough evidence of that. As the defendant himself admits, he leaves the bar angry. He goes out to get the tire iron. People see him go out to get the tire iron. He then doesn't go back into the tire iron. Instead, he goes and gets this gun and he comes back with the gun. And afterwards, his actions after the crime are certainly evidence of consciousness of guilt. He speeds down the streets. He tosses the gun out somewhere. Wasn't there some consistency that when he returned with the gun, he kicked in the door? The witnesses did say they kicked in the door. One witness said they kicked in the door and came in and then all of a sudden there's a lot of shooting. Yes. There really wasn't any damage to the door, was there? Well, the bar owner, Bertha, testified that there was damage to the door.  So, I mean, again, a rational trier of fact could pick and choose and say that the bar owner was correct when she knew the status of her door before and after. I don't know that the detective was specifically looking at it, but he did say he didn't see any. But there is evidence both ways. And, again, where there is evidence both ways, under the standard of review, we have to take it in the light most favorable to the prosecution, not to the defense. For the reasons that I've stated here and the reasons I've stated in the brief, we'd ask that you affirm the defendant's conviction. Thank you. Ms. Palacio, brief rebuttal, please. Just a couple of points. So the state is arguing that, you know, why should we believe John Wilson? He lied here, here, and here. But what do we have left if we don't believe John Wilson? We have the testimony of Bertha and John Morissette. Clearly they are less credible than John Wilson. They have so much more to lose. Then I would argue that John Wilson's testimony, aside from, you know, lying initially about the fact that. Mr. Morissette, you know, he's a convicted felon. But he admitted that he basically, as your opponent said, Morissette seems to be the one that came clean, although he had the most to lose. Well, why did he come clean? I would argue that he only came clean because it became very clear that the injuries to John Wilson were caused by shotgun pellets. Had that not been the case. Nevertheless, he did admit it, and the jury chose to believe him. So what are we to do with that? Well, I think the standard being that we need to look at the unreasonable conclusion that the jury came to, given the three witnesses who are completely unbelievable. None of them are believable in terms of how this happened and who was the initial aggressor. So if we don't believe Wilson, should we believe Bertha? Should we believe John Morissette? They certainly have a lot to lose here. And I would argue that it makes much more sense that if someone was acting in a self-defensive mood, that he would just try to escape. Why is it unbelievable that he would try to escape as opposed to trying to kill someone else? That doesn't make more sense to me. Hayes has always maintained that he was just acting in self-defense to get out of there. And there's nothing to say that that's unreasonable. And then the argument. You still have to get around the fact that he left the bar, went and got a gun, and came back. That's a big obstacle. That really punches a hole in your self-defense argument. I mean, obviously that's what the jury thought or something along those lines. The man left the bar and drove away in his car and came back a half hour later with a gun and claimed self-defense. That's a tough sell. I can see how it is a tough sell. But simply because he has a gun does not mean that he was not fired upon first. And also, when you look at the physical evidence, it doesn't appear that he did fire first. This was clearly a chaotic incident. But the evidence shows that he fired after he was fired upon. And then, ma'am, you know, we have to, you know, we have to write something that makes sense. Go along with your argument. There is testimony from Marsat who basically said he was going to shoot this. He was trying to shoot the guy. But somebody bumped him, so he fired into the floor. I mean, the jury obviously believed that. They accepted that version of the events, and that's what shot Wilson in the foot. That's why Hayes was not convicted of shooting Wilson in the foot. I mean, that seems like this jury was paying attention to the evidence and attaching the evidence to the crime where it belonged. That's what it looks like to me. I would argue that if we really do look at the evidence, that that conclusion is unreasonable. And then if you look at the lynch evidence, maybe if the jury had had before it the kind of evidence showing that John Morisette was the kind of person who would fire first, they could have come back with an acquittal on that account as well. They didn't have the full picture. We have a full picture of someone who reacts quickly and with violence, especially in this capacity as a bouncer at this bar. And not only to some stranger who comes back into the bar after some kind of altercation, he does this to someone who he considers who he calls his stepfather. If he's willing to do that to his stepfather, wouldn't he have the same reaction to some stranger with whom he had words with earlier in the evening? It just simply was not a full picture in front of the jury. So while it was, I say, unreasonable to come to the conclusion that Hayes was not acting in self-defense, at the very least there should be a neutral, because the jury didn't have the evidence it needed to really come to the conclusion to decide who was the initial aggressor in this case. Let me ask you again. The test is but for, as far as the attorney's actions here. But they did receive the information that he was a convicted felon, correct? I just don't think that just receiving information that someone... What was the nature of those felonies? It was a burglary and armed habitual UUW, an aggravated UUW. And the jury doesn't have the context of those convictions. If they had the context of John Morissette pulls out a gun at the slightest provocation when he's working at this bar on his own family member, that's a much fuller description and picture of who we're dealing with in this instance. There is shots fired between two people, and we don't have a full picture of who John Morissette was and what his violent tendencies were. Anything else? No. Thank you very much, Mr. Palacio. This case will be taken under advisement.